UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PERCY WILSON, JR.,

Petitioner,

v. Case No. 3:24-cv-121-HES-SJH

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent.

---

# ORDER

## I. Status

Petitioner Percy Wilson, Jr., an inmate of the Florida penal system, initiated this action on February 2, 2024, by filing, through counsel, a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. On March 25, 2024, Petitioner filed an Amended Petition, Doc. 3, with exhibits, Docs. 3-1 to 3-5. Petitioner challenges a 2017 state court (Duval County, Florida) judgment of conviction for armed robbery and possession of a firearm by a convicted felon. *See* Doc. 3. Respondents filed a Response to the Amended Petition, Doc. 6, with exhibits, Docs. 6-2 to 6-30. Petitioner filed a Reply. Doc. 9. This action is ripe for review.[1]

[1] In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d

## II. Relevant Factual and Procedural History

On February 8, 2017, a jury found Petitioner guilty of armed robbery with a firearm (count one) and possession of a firearm by a convicted felon (count two). Doc. 6-3 at 57-59. On March 23, 2017, the circuit court sentenced Petitioner, as to count one, to a term of life imprisonment as a Prison Releasee Reoffender ("PRR"), with a ten-year minimum mandatory, and a concurrent fifteen-year term of imprisonment with a three-year minimum mandatory as to count two. Id. at 91-95. The First District Court of Appeal ("First DCA") per curiam affirmed Petitioner's convictions and sentence on August 17, 2018, Doc. 6-9, and the mandate issued on September 7, 2018, Doc. 6-10 at 1.

On November 6, 2019, Petitioner, through counsel, filed a motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure ("Rule(s)") 3.800(a)[2]. Doc. 6-11 at 4-8. The trial court summarily denied the

1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

[2] In his first Rule 3.800 motion, Petitioner alleged two claims: (1) his sentence was unconstitutionally disproportionate to similarly situated offenders; and (2) his sentence was substantively unreasonable and the PRR statute violated the Due

motion on November 18, 2019. Id. at 9. The First DCA per curiam affirmed the trial court's order with a written opinion on July 27, 2020. Wilson v. State, 298 So. 3d 736 (Fla. 1st DCA 2020); Doc. 6-14. The mandate issued on August 17, 2020. Doc. 6-15.

Petitioner, through counsel, filed a second Rule 3.800(a) motion on March 1, 2020, claiming that the trial court's finding that Petitioner qualified as a PRR[3] violated Apprendi.[4] Doc. 3-4. The motion was summarily denied on April 21, 2020. Doc. 6-16 at 22-23. Petitioner appealed and filed his brief on August 3, 2020. Doc. 6-17. The State filed an answer brief on April 13, 2023. Doc. 6-24. The First DCA per curiam affirmed in a written opinion filed March 11, 2021. Wilson v. State, 312 So. 3d 1057 (Fla. 1st DCA 2021); see Doc. 6-20. The mandate issued on April 1, 2021. Doc. 6-21.

On September 1, 2020, Petitioner, through counsel, filed a motion to vacate plea, judgment, and sentence pursuant to Rule 3.850, alleging the following two claims of ineffective assistance of counsel: (1) trial counsel was ineffective for failing to file a motion to suppress the unnecessarily suggestive photo spread; and (2) trial counsel was ineffective for failing to advise

Process Clause of the Fourteenth Amendment. Petitioner does not seek review of these claims in his habeas petition.

[3] Under Florida Statute § 775.082(9), a person is a PRR if the enumerated offense of conviction was committed within three years of being released from prison.

[4] Apprendi v. New Jersey, 530 U.S. 466 (2000).

Petitioner to offer to plea to some term of years less than life. Doc. 6-22 at 5-12. An evidentiary hearing was granted as to claim two only and was conducted on March 25, 2022. Doc. 6-22 at 825; 971-1025. Kevin Jenkins, Petitioner's trial counsel, and Petitioner, were the only witnesses called during the evidentiary hearing. Id. at 980-1015. The trial court denied both claims in a written order entered on June 10, 2022. Doc. 3-3.

Petitioner's appeal of the trial court's ruling was transferred from the First DCA to the Fifth District Court of Appeal ("Fifth DCA"). Doc. 6-22 at 967. Petitioner filed his brief on February 8, 2023. Doc. 6-23. Petitioner's brief only included argument as to his second claim of ineffective assistance of counsel. Id. at 7-11. The State filed an answer brief on April 13, 2023. Doc. 6-24. Petitioner filed a reply brief on May 15, 2023. Doc. 6-25. The Fifth DCA per curiam affirmed the trial court's order without a written opinion on December 12, 2023. Doc. 6-26. Petitioner filed a motion for rehearing which was denied on December 28, 2023. Doc. 6-27; Doc. 6-28. The mandate issued on January 29, 2024. Doc. 6-29.

**III. One-Year Limitations Period**

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

## IV. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016) (explaining AEDPA deference), abrogation in part on other grounds recognized by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for its decision to qualify as an adjudication on the merits. Harrington v. Richter, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or

> most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 584 U.S. 122, 125-26 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362,

> 410 (2000) ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (parallel citations omitted).

"AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 19 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe v. Warden, 834 F.3d 1323, 1337-38 (11th Cir. 2016) (explaining in detail the parameters "for limited federal review" of state court decisions under § 2254(d)(1) and (d)(2)). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

### B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365–366, 115 S. Ct. 887; O'Sullivan

> v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[5] supra, at 747–748, 111 S. Ct. 2546; Sykes,[6] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice

[5] Coleman v. Thompson, 501 U.S. 722 (1991).
[6] Wainwright v. Sykes, 433 U.S. 72 (1977).

> from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[7] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would

---

[7] Murray v. Carrier, 477 U.S. 478 (1986).

result. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

However, procedural default is a non-jurisdictional affirmative defense. It must be raised by the government in their Response, or by the State in its Answer. Delap v. Duggar, 890 F.2d 285, 302 n. 20 (11th Cir. 1989); Oakes v. United States, 400 F.3d 92, 96 (1st Cir. 2005). If it is not raised, the procedural default defense is deemed waived. Id.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a

person must show that (1) counsel's performance was outside the wide range of reasonable, professional assistance, and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland, "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which . . . will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (internal quotation marks omitted). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference — this one to a state court's decision — when [federal courts] are

considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689).

## V. Findings of Fact and Conclusion of Law

### A. Ground One

In Ground One, Petitioner claims that his trial counsel was ineffective for failing to file a motion to suppress the unnecessarily suggestive photo spread which identified him as the robber. Doc. 3-1 at 2-3. Petitioner first raised this claim in his Rule 3.850 motion. Doc. 6-22 at 5-12. However, Petitioner did not argue this claim in his initial brief filed with the Fifth DCA. Doc. 6-23. Thus, Respondent argues that this claim is unexhausted. Doc. 6 at 7-11.

An appeal following a postconviction proceeding for which an evidentiary hearing was held requires briefs, and failure to include issues in the appellate

brief is abandonment of those claims even when the evidentiary hearing is not held on all grounds. Fla. R. App. P. 9.141(b)(3)(C); Cortes v. Gladish, 216 F. App'x 897 (11th Cir. 2007) (recognizing that failure to address issues in an appellate brief following an evidentiary hearing on a Rule 3.850 motion would constitute a waiver of the unbriefed issue); Rogers v. Sec'y, Dep't of Corr., No. 8:07-CV-1375-T-30TGW, 2010 WL 668261, at *53 (M.D. Fla. Feb. 19, 2010) (citing Cortes and finding Rogers waived and defaulted his claim by not briefing the claim after receiving an evidentiary hearing on his Rule 3.851 motion in state court).

Indeed, Florida courts have held that claims not argued in the initial brief, or claims that are only supported by conclusory arguments, are deemed waived. See Shere v. State, 742 So. 2d 215, 218 n.6 (Fla. 1999) (noting that issues raised in appellate briefs that contain no argument are deemed abandoned); Doorbal v. State, 983 So. 2d 464, 482-483 (Fla. 2008) (finding that general, conclusory argument is insufficient to preserve an issue raised in a Rule 3.851 motion); Prince v. State, 40 So. 3d 11, 13 (Fla. 4th DCA 2010) ("An appellant who presents no argument as to why a trial court's ruling is incorrect on an issue has abandoned the issue-essentially conceding the denial was correct.").

Florida courts apply this rule even when a post-conviction evidentiary hearing is granted on only a limited number of claims. To preserve the issue

for appellate review, the movant must include argument on all claims, even summarily denied claims. See Connely v. State, 205 So. 3d 885 (Fla. 5th DCA 2016) ("The postconviction court summarily denied all of Appellant's claims.... Appellant did not address Ground 8 in his brief; therefore, it is deemed abandoned.").

Because Petitioner waived appellate review of this claim, the state courts were not afforded a full opportunity to resolve any constitutional issue, and the claim is therefore unexhausted. See O'Sullivan, 526 U.S. at 845. Petitioner is also outside Florida's two-year time limitation period for ineffective assistance of counsel claims, as his judgement and sentence became final on September 7, 2018. Doc. 6-10 at 1. Accordingly, he is procedurally barred from bringing this claim before the state courts, thus making any future attempts to exhaust it futile. Petitioner has not made any arguments relating to the exhaustion of the claim in either his Amended Petition or Reply; thus, he fails to demonstrate cause or prejudice, much less the existence of the fundamental miscarriage of justice exception to the procedural bar. Accordingly, the claim is procedurally defaulted and due to be dismissed.

**B. Ground Two**

In Ground Two, Petitioner claims he was denied effective assistance of counsel because his trial counsel failed to advise him to offer to plea to some term of years less than life. Doc. 3-1 at 3-5. Petitioner alleges that his trial

counsel, Mr. Jenkins, advised him that he did not think the State would be interested in any offers. See id. at 4. He further alleges that "[a] reasonably competent criminal defense attorney" would have advised him to offer the State a term of years less than life. Id. Petitioner speculates that had he been advised to make a plea offer, he would have offered thirty years and there was a reasonable probability the State would have accepted it. See id. at 4-5.

Petitioner raised this claim in his motion to vacate plea, judgment, and sentence. Doc. 3-3 at 2-12. The circuit court held an evidentiary hearing on the claim. Only Petitioner and Mr. Jenkins testified at the evidentiary hearing. The following is a summary of the relevant testimony to place the issue in context.

Mr. Jenkins testified that he was an assistant public defender when he represented Petitioner. Doc. 6-22 at 981. At the time he took over Petitioner's case from prior counsel, a 12-year prison counteroffer had already been conveyed to the State, which they rejected. Id. at 982-83. Mr. Jenkins asked the State what type of counteroffer would be acceptable, and he was told 25-30 years. Id. at 983. Mr. Jenkins testified that he relayed this information to Petitioner, and Petitioner declined to make another counteroffer to the State. Id. Mr. Jenkins testified that Petitioner was aware he would receive a mandatory life sentence as a PRR if convicted, and they discussed the pros and cons of going to trial. Id. at 992.

When questioning Mr. Jenkins at the evidentiary hearing, Petitioner pressed him to explain why, after the first jury was dismissed and the trial was continued due to the victim not appearing, he did not use this opportune time to affirmatively advise Petitioner that he needed to make a plea offer. Mr. Jenkins responded:

> ...most of the clients don't take very kindly to you trying to force their hand to take a plea deal. They are not very happy about that. I can advocate as much as I want to, but then they say, "Oh you're part of the State."
>
> But I can say, "This is what we can do." I don't say, "This is what you need to do." I don't want to influence them. If the client gets up onto the thing, whenever they're taking a plea deal, and the judge asks them, "Are you doing this freely and voluntarily?" And he says, "No. Mr. Jenkins, like, told me to do this." That seems like that's not very ethical and/or helpful, and I don't think the plea would go through.
>
> So I'm trying to do a delicate balance whenever I negotiate hypothetically to clients of their options and give them the pros, the cons, what you're looking at, scoresheet guidelines, what the offer is, what the State is willing to do. So that way they have as many options as they possibly can and they can't say that I'm forcing them to do anything.

Id. at 996-97.

Petitioner testified that he did not remember Mr. Jenkins informing him that the State would accept a 25–30-year prison offer. Id. at 1006-07. He further said it was possible that Mr. Jenkins did give him that information, but he had forgotten because 6 years had passed. Id. at 1007. Petitioner

testified that Mr. Jenkins told him they would win at trial, and the State would reject any counteroffer he gave them. Id. at 1005. Petitioner was asked if Mr. Jenkins had "affirmatively. . . in clear, strong language" told him to make an offer to the State, would he had done so. Petitioner responded, "Absolutely, sir." Id. Petitioner testified that he had three prior felony cases, and his public defender negotiated a plea agreement in all three cases. Id. at 1003-04; 1011.

The circuit court denied relief, stating in pertinent part:

> As the State argued in closing at the evidentiary hearing, Defendant has not presented any credible evidence that Mr. Jenkins performed below an acceptable standard of practice or that his representation was equivalent to serving as "a potted palm," as collateral counsel argued. The prosecutor advised Mr. Jenkins that the State would be willing to entertain a 25-30 year offer. Mr. Jenkins was 100 percent certain that he conveyed this information and discussed it with the Defendant, while also discussing trial strategy and pointing out the pros and cons of the State's case. His notes regarding trial strategy indicated the Defendant declined to make a counter-offer. If Mr. Jenkins had vigorously urged Defendant to offer 25 years, it is highly likely that Defendant would be before this Court alleging that counsel was ineffective for coercing him to enter a plea. Therefore, this Court finds no merit to Defendant's claim that counsel was ineffective for failing to advise him to offer to plea to some term of years less than life.

Doc. 3-3 at 11. The Fifth DCA per curiam affirmed the circuit court's order without a written opinion. Doc. 6-26.

Petitioner cites to Borea v. Keane in support of his argument. 99 F.3d 492 (2nd Cir. 1996). In Borea, the defendant was offered a plea agreement of one to three years on a case that ultimately resulted in a twenty-year-to-life sentence. Id. at 494. It was undisputed that the evidence against the defendant was overwhelming. Id. at 495. However, defense counsel testified that he had not in any way or at any time discussed the advisability of accepting or rejecting the offered plea with the defendant. Id. The Second Circuit ultimately found that defense counsel was ineffective for never giving his client any advice or suggestion as to how to deal with the offered plea bargain. Id. at 497-98.

However, the facts in Borea are distinguishable to those here. In the instant case, Petitioner was never offered a plea agreement. Rather he was told that the State was likely to accept a counteroffer of twenty-five to thirty years if Petitioner made such an offer. Doc. 6-22 at 983. The state court found that Mr. Jenkins relayed this information to Petitioner, and that he discussed the pros and cons of the case with Petitioner, as well as the consequence of a mandatory life sentence if convicted. Doc. 3-3 at 11. The record supports the state court's findings of fact. See 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct").

Petitioner has not cited any caselaw that sets forth a per se rule that counsel must "vigorously" advise their client to extend a counteroffer to the state. In fact, established federal law points to the contrary. See, e.g., Wofford

v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) ("[C]ounsel need only provide his client [who is considering a plea offer] with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial."); Turner v. Calderon, 281 F.3d 851, 881 (9th Cir. 2002) (finding no legal basis for an argument that "counsel has an obligation to 'strongly recommend' the acceptance or rejection of a plea offer"); Purdy v. United States, 208 F.3d 41, 45 (2d Cir. 2000) ("[T]he ultimate decision whether to plead guilty must be made by the defendant. And a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer.").

After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on the basis of this claim.

### C. GROUND THREE

In Ground Three, Petitioner claims the trial court's finding that he was a PRR as to the armed robbery violated Apprendi and his Sixth Amendment right to a jury trial. Doc. 3-1 at 5-20. Specifically, Petitioner argues that the Supreme Court has held that "any fact that increases the penalty for a crime

beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. Alleyne extended Apprendi's rule to facts that increase a mandatory minimum sentence. 570 U.S. at 111-13. According to Petitioner, the trial judge's findings, based on a preponderance of the evidence, that his crime of conviction is a qualifying offense and it was committed within three years of him being released from a correctional facility, are findings that must be made by the jury beyond a reasonable doubt because such findings increased his penalty to a mandatory term of life imprisonment. Doc. 3-1 at 5. Petitioner further argues error in the fact that the previous conviction he was incarcerated for was not contained in the information. Id. at 5-6.

Petitioner first raised this claim in his Rule 3.800(a) motion filed on March 1, 2020. Doc. 3-4. The trial court summarily denied the motion. Doc. 6-16 at 22-23. The First DCA per curiam affirmed the trial court's denial of the motion and entered the following written opinion:

> Affirmed. See Williams v. State, 143 So. 3d 423 (Fla. 1st DCA 2014) (rejecting the argument that Florida's [PRR] statute is unconstitutional based on the holdings of Alleyne v. United States, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), and Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)); Sims v. State, 260 So. 3d 509 (Fla. 1st DCA 2018) (same).

Doc. 6-20.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. To prevail, Petitioner must show the rejection of his claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "'[C]learly established Federal Law, as determined by the Supreme Court of the United States,' refers to the Court's holdings, not its dicta, as of the time of the state-court decision in question." Bush v. Sec'y, Fla. Dep't of Corr., 888 F.3d 1188, 1195 (11th Cir. 2011). If *some* fair-minded jurists could agree with the state court's decision, the application of federal law is reasonable and habeas relief must be denied. Hill v. Humphrey, 662 F.3d 1335, 1346 (11th Cir. 2011) (emphasis added). Petitioner cannot meet this demanding standard.

In denying Petitioner's claim, the First DCA relies on Williams and its application of federal law to Florida's PRR sentencing scheme. Alleyne made clear that the rule of Apprendi applied to the fact finding required to impose a higher mandatory minimum sentence, but Apprendi contains an exception that allows a trial court at sentencing to make findings as to "the fact of a prior conviction." See Apprendi, 530 U.S. at 490; see also Almendarez-Torres v. United States, 523 U.S. 224, 226-27 (1998). The Supreme Court recognizes that exception to authorize courts themselves to determine what a prior conviction offense was, as well the elements it encompassed under governing law. See

Mathis v. United States, 579 U.S. 500, 511-12 (2016); Descamps v. United States, 570 U.S. 254, 269 (2013). Moreover, a provision that simply authorizes an enhanced sentence when an offender also has an earlier conviction is a penalty provision, and the Constitution does not require the State to charge that earlier conviction in the information. Almendarez-Torres, 523 U.S. at 226-27 (1998).

Florida state appellate courts have long recognized that a trial judge's PRR determination came within Apprendi's exception for "the fact of a prior conviction." See Lopez v. State, 135 So. 3d 539 (Fla. 2d DCA 2014) (finding that date of release from prison is part of a defendant's prior record and does not require a jury determination for purpose of proving PRR status); Calloway v. State, 914 So. 2d 12 (Fla. 2d DCA 2005) (concluding that a prison release date is a direct derivative of a prior conviction); Ryland v. State, 360 So. 3d 784 (Fla. 3d DCA 2023) (holding that under Apprendi, Florida's PRR statute constitutionally empowers a judge to make a release date determination based on the preponderance of the evidence). Moreover, federal courts on habeas review have agreed that such an interpretation was not contrary to, or an unreasonable application of, clearly established federal law. See, e.g., Chapman v. Sec'y, Fla. Dep't of Corr., No. 21-10137-F, 2022 WL 20303055, at *1 (11th Cir. June 3, 2022) ("[T]he state court's determinations, that Apprendi did not require a jury to find [petitioner's] release date beyond a reasonable

doubt and that the state was not required to allege his PRR status and its intent to seek an enhanced sentence in the information, were not unreasonable, given that Florida courts have rejected similar challenges to the PRR Act."); Cato v. Sec'y, Fla. Dep't of Corr., No. 3:17-CV-20-J-32MCR, 2019 WL 6877172, at *4-5 (M.D. Fla. Dec. 17, 2019) ("The Court again recognizes that the United States Supreme Court held that prior convictions are not an "element" that must be found by a jury"); McGriff v. Sec'y, Dep't of Corr., No. 3:15-CV-1281-J-39JBT, 2018 WL 354956, at *6 (M.D. Fla. Jan. 10, 2018) ("[T]he trial court did not violate Petitioner's constitutional rights to a trial by jury by making a PRR designation").

In his Reply, Petitioner argues that the Supreme Court's recent decision in Erlinger v. United States, 602 U.S. 821 (2024), has extended the reasoning of Apprendi to require his PRR sentence be vacated as unconstitutional. Doc. 9 at 7. Erlinger requires a jury to make the finding of whether a defendant's three prior felony convictions were committed on different occasions as required to trigger a mandatory minimum sentence under the Armed Career Criminal Act. 602 U.S. at 834-35. In Erlinger, the Court held that a judge may determine a defendant's prior offenses, and dates of which they occurred, but they could not decide whether the defendant's "past offenses differed enough in time, location, character, and purpose to have transpired on different occasions." Id. at 840. Erlinger calls into question the continued viability of

Florida decisions upholding the PRR procedure considering that a prison release date is not a fact of a prior conviction or even the date of a prior conviction. However, even if Erlinger explicitly found that Florida's PRR sentencing scheme required a jury finding, Erlinger was decided in 2024, years after Petitioner's judgment and sentence became final in 2018. Therefore, Erlinger was not clearly established federal law at the time the First DCA denied Petitioner's claim. Accordingly, the Court finds that the state court's adjudication of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. As such, Ground Three is denied.

## VI. Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Petitioner seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed

further,'" Miller-El, 537 U.S. at 335–36 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Amended Petition (Doc. 3) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3. If Petitioner appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending

motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of September, 2026.

HARVEY E. SCHLESINGER
United States District Judge

CC-3 9/8
c: Counsel of record